IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Edward W. Nottingham**

Civil Action No. 06–cv–02323–EWN

IN RE:
JATO COMMUNICATIONS CORP.,

      Debtor.

JEFFREY A. WEINMAN, Chapter 7
Trustee,

      Plaintiff/Appellant,

v.

PETERSON EQUITIES, LLC,

      Defendant/Appellee,

_____

**ORDER AND MEMORANDUM OF DECISION**
_____

      This is a bankruptcy appeal.  Appellant Jeffrey A. Weinman, the trustee in bankruptcy of

Debtor Jato Communications Corp., appeals from the bankruptcy court's order denying his

motion for an entry of judgment on a separate document.  Jurisdiction is based on 28 U.S.C.A. §

158 (West 2007).

## FACTS

The relevant facts of this case are undisputed.  On March 21, 2002, creditors filed an involuntary petition for Chapter 7 relief against Debtor.  (R. on Appeal, Bankr. Docket No. 1 [Involuntary Pet.] [hereinafter "R. on Appeal"] [filed Nov. 28, 2006].)[1]  On April 3, 2003, Appellant filed an adversary proceeding seeking to avoid certain alleged pre-petition transfers of assets from Debtor to Appellee Peterson Equities, LLC.  (*Id.*, Adv. P. Docket No. 1 at 1 [Adversary Compl.].)  Although the adversary proceeding was pending before Bankruptcy Judge A. Bruce Campbell, the case was tried before Judge Charles E. Matheson, who heard the case to aid the court with an overloaded docket.[2]  (*Id.*, Adv. P. Docket No. 78 at 15 [11/9/06 Bankr. Ct. Trans.].)  On October 22, 2003, Judge Matheson found against Appellant and issued an order dismissing the case (the "Matheson Judgment").  (*Id.*, Adv. P. Docket No. 28 [Matheson J.].)  This decision adversely impacted Appellant's position in a variety of other pending adversary proceedings concerning pre-petition transfers.  (*See id.*)

On October 29, 2003, Appellant filed a timely notice of appeal of the Matheson Judgment.  (*Id.*, Adv. P. Docket No. 35 [Notice of Appeal].)  While the appeal was pending, Appellant and Appellee entered into a settlement agreement (the "Settlement Agreement"), which the

---

[1]The record of this appeal encompasses documents in three different dockets: (1) the docket of the main bankruptcy case, case number 01–13546 (cited herein as the "Bankr. Docket"); (2) an adversary proceeding arising out of the main bankruptcy case, adversary proceeding number 03–01285 (cited as "Adv. P. Docket"); and (3) a prior appeal of the adversary proceeding to this court, case number 03–cv–02144–JLK (cited as "Dist. Ct. Docket").

[2]The main case was pending before Judge Sidney B. Brooks.

bankruptcy court subsequently approved.  (*Id.*, Bankr. Docket Nos. 191 [Mot. to Approve

Settlement], 201 [Order Granting Mot. to Approve Settlement].)  The Settlement Agreement

required Appellant to give up his appeal in exchange for Appellee's cooperation in obtaining an

order from the district court directing the bankruptcy court to vacate the Matheson Judgment.

(*See* Appellant's Opening Br., Ex. D at 3 [Settlement Agreement] [filed Feb. 9, 2007] [hereinafter

"Appellant's Br."].)  The Settlement Agreement expressly provided that it would become "null

and void" if Appellant and Appellee did not "file a joint motion to dismiss the [a]dversary

[p]roceeding with prejudice" within ten days of entry of an order vacating the Matheson

Judgment.  (*Id.*)

On August 4, 2004, upon the joint request of counsel for Appellant and Appellee, District

Judge John L. Kane signed an order drafted by counsel (the "Remand Order").  (Appellee's Resp.

to Appellant's Opening Br., Ex. 1 [8/4/04 Dist. Ct. Order] [hereinafter "Appellee's Resp."].)  This

order remanded the adversary proceeding to the bankruptcy court and ordered the bankruptcy

court to vacate the Matheson Judgment.  (*Id.*)

The bankruptcy court did not act on the Remand Order.  (*See* R. on Appeal, Adv. P.

Docket No. 78 at 17 [11/9/06 Bankr. Ct. Trans.].)  The court explained its inaction:

> Faced with . . . the prospect of failing to respond to the order of the [d]istrict
> [c]ourt on remand or suspecting I was to be the third judge being manipulated in
> [Appellant's] effort to avoid the implications of Judge Matheson's ruling without
> risking its affirm[a]nce on appeal, I literally let Judge Kane's August 4, 2004
> remand order sit on my desk for several months.

(*Id.*)

On May 3, 2005, Appellant filed a motion with the district court to reopen the appeal. (*See id.*, Dist. Ct. Docket No. 26 [Mot. for Order Reopening Appeal].)  While the motion was pending, Bankruptcy Judge Brooks issued a memorandum opinion and order in another adversary proceeding (the "*Diablo* Adversary") brought by Appellant in connection with other allegedly avoidable transfers made by Debtor.  (Appellee's Resp., Ex. 3 [Order in *Weinman v. Diablo Mgmt. Group, Inc.*, Adv. P. No. 03–01269].)[3]  In the memorandum opinion, Judge Brooks discussed the Matheson Judgment and the subsequent Settlement Agreement, noting that in presenting the Settlement Agreement to the bankruptcy court, Appellant had "not fully revealed" the "ramifications and adverse consequences of vacating" the Matheson Judgment.  (*Id.*, Ex. 3 at 7 [Order in *Weinman v. Diablo Mgmt. Group, Inc.*, Adv. P. No. 03–01269].)  Judge Brooks emphasized that, during the pendency of the *Diablo* Adversary, the transferee-defendant expressed "surprise, great dismay, and anger at not having received meaningful and legally sufficient notice of the proposed vacatur in" the instant case, which deprived the transferee-defendant of "its putative collateral estoppel defenses."  (*Id.*)

---

[3]Appellant asserts that because Appellee failed to designate Judge Brooks' order regarding the *Diablo* Adversary as part of the appellate record, this court may not consider it. (Apppellant's [sic] Reply Br. at 13 [filed Mar. 22, 2007] [hereinafter "Appellant's Reply"].)  In light of the fact that Judge Kane discussed the *Diablo* order in his July 6, 2005 hearing — the transcript of which Appellant designated as part of the record on appeal— I reject Appellant's disingenuous argument and take notice of the order.  (*See* Appellant's Designation of R. on Appeal at 3 [filed Nov. 28, 2006]); *see also In re Winslow*, 186 B.R. 716, 721 (D. Colo. 1995) (taking judicial notice of the bankruptcy court's records and files).

On July 6, 2005, Judge Kane held a hearing on Appellant's motion to reopen the appeal.

(R. on Appeal, Dist. Ct. Docket No. 34 [7/6/05 Hr'g Tr.].)  Judge Kane noted that he had

considered Judge Brooks' opinion in the *Diablo* Adversary and proceeded to state:

> I signed th[e Remand Order], and I was wrong. . . .  I . . . am concerned that the
> parties might be trying to end run something in the bankruptcy case. . . .  Whether
> through inadvertence or being misled and inadequately informed, I signed the
> [Remand] Order, and I will now undo the damage.  This case is remanded to the
> [b]ankruptcy [c]ourt.  The order I entered on August 4, 2004, is rescinded for
> further proceedings consistent with this [o]rder.  If, indeed, [Appellant] wishes to
> appeal [the Matheson Judgment], he may do so, and the time elapsed between the
> filing of the first [n]otice of [a]ppeal and today *will not [sic] be tolled*.  Any
> [n]otice of [a]ppeal or [a]mended [n]otice of [a]ppeal will be served on such
> creditors and parties of interest as Bankruptcy Judge Brooks may require.

(*Id.*, Dist. Ct. Docket No. 34 at 4–5 [7/6/05 Hr'g Tr.] [emphasis added].)  Given the thrust of the

language preceding the statement that the time for appeal "will not [sic] be tolled," it is obvious

that the inclusion of the word "not" was either a misstatement or a typographical error.  Indeed,

the courtroom minutes for this hearing state:

> The Remand Order entered on August 4, 2004 is RESCINDED, as specified.
> Case is REMANDED to the [b]ankruptcy [c]ourt and the [a]ppeal is DISMISSED
> WITHOUT PREJUDICE to its being refiled at a later date.  For purposes of any
> new notice of appeal, the time elapsed between the filing of the first notice of
> appeal and any ensuing actions of the [b]ankruptcy [c]ourt *on remand is tolled*.

(*Id.*, Dist. Ct. Docket No. 33 at 1 [7/6/05 Hr'g Minutes] [emphasis added].)  Hereinafter, I refer

to this July 6, 2005 district court order as the "Second Order."

From July 6, 2005 to December 8, 2005, no docket entries were made in the adversary

proceeding.  On December 9, 2005, the bankruptcy court closed the case.  (*See id.*, Adv. P.

Docket [12/9/05 Notation].)  On July 13, 2006, Appellant filed his "Motion Pursuant to Fed. R.

Civ. P. 58(d) and Fed. R. Bank. P. 9021 for Entry of Judgment on Separate Document" (the

"Document Motion"), requesting that the bankruptcy court enter final judgment in the adversary

proceeding.  (*Id.*, Adv. P. Docket No. 51 [Doc. Mot.].)  Appellee opposed the motion and

requested that the bankruptcy court impose sanctions upon Appellant for filing a frivolous,

untimely motion.  (*Id.*, Adv. P. Docket No. 52 [Doc. Mot. Resp.].)  On November 9, 2006,

Bankruptcy Judge Campbell held a hearing and orally denied the Document Motion, stating:

> The [b]ankruptcy [c]ourt does not enter judgment except on matters decided by
> bankruptcy judges.  It does not enter judgments by separate document for the
> [d]istrict [c]ourt. . . .  [Appellant] says he wants this [c]ourt to enter a separate
> judgment on Judge Kane's July 6[], 2005 remand order so it will start time running
> on [the Matheson Order].  The time to file a new notice of that appeal ran out
> months ago. . . .  Judge Kane did not give [Appellant] an indefinite period to
> appeal Judge Matheson's October 2003 ruling[.  B]y any means of applying Rule
> 8002, [Appellant's] time to file a new notice of appeal following Judge Kane's July
> 6[], 2005 remand was long gone by the end of July 2005.  Accordingly,
> [Appellant's] Rule 58(d) request is denied and this adversary proceeding shall
> remain closed.

(*Id.*, Adv. P. Docket No. 78 at 18–19 [11/9/06 Bankr. Ct. Trans.].)  On November 15, 2006,

Judge Campbell filed a judgment memorializing the denial of the Document Motion.  (*Id.*, Adv. P.

Docket No. 68 [Doc. Mot. J.].)  Appellant filed a timely notice of appeal.  (*Id.*, Adv. P. Docket

No. 71 [Notice of Appeal].)

On February 9, 2006, Appellant filed his opening brief, arguing that the bankruptcy court

committed a series of three errors: (1) approving the Settlement Agreement "if it had reservations

and never intended to allow [Appellant] to" follow through with it; (2) ignoring the Remand

Order's vacatur mandate; and (3) ignoring language in the Second Order suggesting that the

district court expected the bankruptcy court to take further action.  (Appellant's Br. at 15–23.)

Thus, Appellant asks this court to: (1) overturn the denial of the Document Motion and remand the case for further proceedings "to address its approval of the Settlement Agreement or otherwise enter an appealable final order;" or (2) allow Appellant to file a new notice of appeal of the Matheson Judgment because the circumstances presented by the case fall within the ambit of the "unique circumstances" doctrine.  (*Id.* at 23.)  On March 12, 2007, Appellee filed its response.  (Appellee's Resp.)  On March 22, 2007, Appellant replied.  (Appellant's Reply.)  This matter is fully briefed.

## ANALYSIS

### 1.    *Legal Standard*

On a bankruptcy appeal, the district court is to review the bankruptcy court's conclusions of law *de novo*.  *In re Branding Iron Motel, Inc.*, 798 F.2d 396, 399 (10th Cir. 1986); *see also In re Lacy*, 304 B.R. 439, 443 (D. Colo. 2004).  The district court defers to the bankruptcy court's findings regarding the fundamental facts, reviewing them under a clearly erroneous standard.  Fed. R. Bankr. P. 8013 (2007); *In re Hedged-Investments Assoc., Inc.*, 380 F.3d 1292,1297 (10th Cir. 2004).

### 2.    *Evaluation*

#### a.    *The Bankruptcy Court's Actions in Relation to the Remand Order and the Settlement Agreement*

Appellant attempts to draw the court's attention to the actions of the bankruptcy court that took place between the time when Judge Kane issued the Remand Order and the time when he rescinded that order by issuing the Second Order.  (Appellant's Br. at 16–20.)  Specifically,

Appellant argues that the bankruptcy court erred by: (1) ignoring the mandate of the Remand

Order; and (2) approving the Settlement Agreement while maintaining reservations with respect

to its validity.  (*Id.*)  In making this argument, Appellant avoids acknowledging the fact that Judge

Kane rescinded the Remand Order, admitting it was mistaken.  (*See* R. on Appeal, Dist. Ct.

Docket No. 34 at 3 [7/6/05 Hr'g Tr.].)  As set forth below, the Second Order's rescission of the

Remand Order unwound the Settlement Agreement, thus rendering moot the impact of any error

the bankruptcy court may have committed with respect to implementing the Remand Order or

approving the Settlement Agreement.

By its own terms, the Settlement Agreement provided that "entry of an [o]rder vacating

the [Matheson] Judgment" by the district court was a condition precedent to the parties'

agreement to "file a joint motion to dismiss" the underlying adversary proceeding.  (Appellant's

Br., Ex. D at 3 [Settlement Agreement].)  Also by its own terms, the Settlement Agreement

provided that if such a joint motion was not filed, the entire Settlement Agreement would be

rendered "null and void and of no further force and effect."  (*Id.*)

The Second Order rescinded the district court's initial order to vacate the Matheson

Judgment and, thus, the Matheson Judgment stood — thus, the aforementioned condition

precedent to the Settlement Agreement did not occur.  (*See* R. on Appeal, Dist. Ct. Docket No.

34 [7/6/05 Hr'g Tr.].)  Consequently, the parties were precluded from filing the joint motion to

dismiss required by the Settlement Agreement.  Because no such joint motion could be filed, the

Settlement Agreement was rendered "null and void."  Accordingly, I find that to the extent the

bankruptcy court could be said to have erred in the time period between the issuance of the

district court's two orders, the district court's admission of error and rescission of the Remand Order renders any such error harmless.  *See Nulf v. Int'l Paper Co.*, 656 F.2d 553, 561 (10th Cir. 1981) ("Errors which could not have prejudiced the unsuccessful party afford no right of reversal of the judgment.").

> **b.**      **The Bankruptcy Court's Actions in Relation to the Second Order**

Appellant asserts that the bankruptcy court erred both in its implementation and interpretation of the Second Order.  (Appellant's Br. at 20–23.)  I consider each line of argument in turn.

> **(1)      Implementation**

Appellant makes much of the court's inaction subsequent to the Second Order.  (*See id.*)  As the ensuing discussion finds, such inaction was sensible in light of the fact that, after the Second Order, nothing remained for the bankruptcy court to do but close the case.  More telling for the purposes of this appeal is Appellant's own inaction.  Below, I separately consider the impact of the court's inaction and Appellant's inaction in considering whether the bankruptcy court erred in implementing the Second Order.

A. THE COURT'S INACTION — Appellant asserts that the Second Order instructed the bankruptcy court "to take some, albeit undefined, action.  No action was taken and therefore, the [b]ankruptcy [c]ourt [erred]." (*Id.* at 21.)  Appellee responds, arguing that the Second Order was a final order within the meaning of 28 U.S.C. § 158(a)(1) and, thus, nothing of substance remained for the bankruptcy court to do after receiving it.  (Appellee's Resp. at 18.)  For the reasons set forth below, I find that the Second Order was a final judgment within the meaning of

28 U.S.C. § 158(a)(1).  This conclusion has a broader impact on the instant appeal than either party discusses.

A district court has jurisdiction to hear appeals from the final judgments, orders, and decrees of a bankruptcy court.  28 U.S.C.A. § 158(a)(1) (West 2007).  The Tenth Circuit has stated: "[T]wo general principles regarding finality [are] well-settled in this circuit, *i.e.*, (1) an order is not final unless it ends the litigation on the merits, leaving nothing for the court to do but execute the judgment, and (2) a district court order is not final if it contemplates significant further proceedings in the bankruptcy court."  *In re Simons*, 908 F.2d 643, 644–45 (10th Cir. 1990) (citing *In re Magic Circle Energy Corp.*, 889 F.2d 950, 953 [10th Cir. 1989]; *In re Commercial Contractors, Inc.*, 771 F.2d 1373, 1375 [10th Cir. 1985]); *see also In re Cascade Energy & Metals Corp.*, 956 F.2d 935, 939 (10th Cir. 1992) (noting that this approach "was adopted to avoid multiple appeals and delay by considering [1] the posture of an appellant's claim within a particular adversary proceeding or discrete unit, and [2] what further proceedings are envisioned by the district court's order").  Remand of a case for further proceedings is ordinarily not appealable because it is not a final decision.  *In re Magic Circle*, 889 F.2d at 953.

As noted above, after rescinding the Remand Order, the Second Order proceeded to dismiss Appellant's appeal without prejudice to refiling and then stated that "[f]or the purpose of any new notice of appeal, the time elapsed between the filing of the first notice of appeal and any ensuing actions of the [b]ankruptcy [c]ourt on remand is tolled."  (R. on Appeal, Dist. Ct. Docket No. 33 at 1 [7/6/05 Hr'g Minutes].)  The transcript of the hearing indicates Judge Kane anticipated that the "ensuing actions" of the bankruptcy court would be the revisitation of its

-10-

previous approval of the Settlement Agreement in light of Judge Brooks' observation in the *Diablo* Adversary that Appellant had "not fully revealed" the "ramifications and adverse consequences" that would flow from vacating the Matheson Judgment. (*Id.*, Dist. Ct. Docket No. 34 at 4–5 [7/6/05 Hr'g Tr.]; Appellee's Resp., Ex. 3 at 7 [Order in *Weinman v. Diablo Mgmt. Group, Inc.*, Adv. P. No. 03–01269].) While Judge Kane remanded the case for further consideration of the Settlement Agreement's approval, his decision to rescind his prior vacatur order rendered any such further consideration unnecessary because, as discussed above, rescission of the vacatur of the Matheson Judgment rendered the Settlement Agreement "null and void." Consequently, upon remand there was nothing further for the bankruptcy court to do: the Matheson Judgment — unquestionably a final judgment itself — stood. While the Second Order suggested that further action would be taken by the bankruptcy court, it should have been obvious to Appellant that the rescission of the Remand Order reinstated the Matheson Judgment and, thus, the Second Order was indeed an atypical remand order, which "end[ed] the litigation on the merits, leaving nothing for the [bankruptcy] court to do but execute" the Matheson Judgment. *In re Simons*, 908 F.2d at 44–645. The bankruptcy court could be expected to execute the Matheson Judgment by simply closing the case, which is an action that hardly constitutes "significant further proceedings." *See id.* Consequently, I find that the Second Order was a final, appealable judgment — if Appellant disagreed with the rescission of the Remand Order's vacatur mandate, he should have filed a timely appeal of the Second Order to the court of appeals.[4]

---

[4]Citing to *Silver Star Enterprises, Inc. v. M/V Saramacca*, 19 F.3d 1008, 1012 (5th Cir. 1994), Appellant asserts that the Second Order "was given by courtroom minutes and was

Undoubtedly, the time for such an appeal has long since passed. *See* Fed. R. App. P. 4(a)(1)(A)

(2007) (establishing thirty-day window for appeal).

      B. APPELLANT'S INACTION — Even assuming that an appeal to the district court remained

a viable alternative after the vacatur of the Remand Order, I find below that the bankruptcy court

did not err in its implementation of the Second Order.  Appellant asserts that after the Second

Order was issued, "[he] waited patiently for the [b]ankruptcy [c]ourt to take further actions. . . .

At a minimum, the [b]ankruptcy [c]ourt could have held a status conference to determine the

parties' intent or entered an order requesting a status report.  The [b]ankruptcy [c]ourt did neither

and instead simply closed the case." (Appellant's Reply at 6.)  Appellee responds, pointing to the

fact that more than one year passed between issuance of Second Order and the only subsequent

action Appellant took in the adversary proceeding — his July 13, 2006 filing of the Document

Motion.  (Appellee's Resp. at 13, 18.)  Thus, argues Appellee, Appellant's laxity caused

expiration of his right to appeal.  (*Id.*)  Appellant replies, contending that he did nothing because

he "had nothing to appeal in July[] 2005." (Appellant's Reply at 12.)  Appellant further asserts

that he "did not waive his right to an appeal of the Matheson Judgment; it was taken away from

him by" the bankruptcy court's inaction.  (*Id.* at 12.)

---

therefore not appealable." (Appellant's Reply at 6.)  Even assuming this is correct, I find that
nothing, save Appellant's own failure to ascertain the impact of Judge Kane's order, prevented
Appellant from timely requesting that the district court issue its judgment in an appealable form.
*See* Fed. R. App. P. 4(a)(7)(B) (2007) (stating failure to set forth order in final form does not
affect the validity of an appeal therefrom).

I am unimpressed with Appellant's attempt to paint himself the victim.  An attentive advocate would not "wait[] patiently" in the face of a supposedly misguided, prejudicial course of conduct taken by a court bent upon "tak[ing] away" his right of appeal.  (*See id.*)  The cause of Appellant's loss of his right to appeal was his own neglect.  Instead of "wait[ing] patiently" for the bankruptcy court to take "some, albeit undefined, action," it would have behooved Appellant to have acted on his own behalf.

As set forth above, the practical impact of the Second Order was to undo the vacatur of the Matheson Judgment.  Thus, upon issuance of the Second Order, a careful party would have realized that — notwithstanding language in the order suggesting that the limitations period was tolled until the bankruptcy court took further action — time was of the essence: if the Matheson Judgment stood, then nothing remained for the bankruptcy court to do but close the case.  This is precisely what the court did.  As Judge Campbell aptly observed, Appellant ought to have realized that "Judge Kane did not give [Appellant] an indefinite period to appeal Judge Matheson's October 2003 ruling. . . ."  (R. on Appeal, Adv. P. Docket No. 78 at 18–19 [11/9/06 Bankr. Ct. Trans.].)  As Appellee suggests, instead of "wait[ing] patiently" for the court to tell him how to proceed, Appellant could have — as diligent litigants are apt to do — filed a motion requesting the court to clarify its intent going forward or taken some other action evincing an intent to preserve his right to appeal the Matheson Judgment.  Instead, Appellant sat on his hands for over *twelve months*, "wait[ing]" for the court to lavish the sort of attention upon his case that he himself could not muster — and now Appellant has the gall to suggest that the bankruptcy court

erred by "fail[ing] . . . [to] h[o]ld a status conference to determine the parties' intent or enter[] an

order requesting a status report."  (Appellant's Reply at 6.)

     Appellant cites no authority supporting the proposition that a court has some sort of duty

to divine a party's "intent" with respect to a case after the entry of final judgment.  I find that no

such duty exists.  If Appellant wished to express his "intent" to the bankruptcy court, he could

have spoken.  The Second Order was not a gag — Appellant has no one but himself to blame for

the consequences of his extended silence.

     *(2)*     *Interpretation*

     An alternative holding may be derived from the fact that nothing of substance remained for

the bankruptcy court to do upon issuance of the Second Order, which expressly — if mistakenly

— provided that Appellee's right to renew his appeal of the Matheson Judgment to the district

court persisted.  Assuming, again, contrary to my prior findings, that Appellant was indeed

entitled to renew his appeal of the Matheson Judgment to the district court, I find below that

Appellant's failure to pursue such an appeal in a timely manner would have caused any right to

such an appeal to expire.

     I discuss this issue because Appellant argues that the bankruptcy court erred with respect

to its determination that his right to appeal expired in July 2005.[5]  (Appellant's Br. at 21.)  As

---

[5]Appellant also argues that the bankruptcy court erred by relying on the *transcript* of
Judge Kane's July 6, 2005 hearing rather than on the *minutes* of that hearing.  (Appellant's Br. at
21–23.)  Even were the court to overlook the inapposite case law upon which Appellant relies in
making this argument, Appellant would still be overreaching.  The portion of the transcript upon
which Appellant contends the bankruptcy court "erroneously relied" differs from the minutes only
in syntax, not substance.  (*See id.* at 22.)

noted above, the bankruptcy court made this determination when it denied Appellant's July 2006 Document Motion, which was the first action Appellant took in the adversary proceeding subsequent to the July 2005 remand order.  (*See* R. on Appeal, Adv. P. Docket No. 51 [7/13/06 Doc. Mot.].)  Below, I reject Appellant's contention that his right to appeal unequivocally hinged on the actions of the bankruptcy court.  Moreover, even if it did so hinge, also I find that Appellant's failure to act after the bankruptcy court closed his case would still have permitted the time for an appeal to expire.  Appellant's arguments to the contrary are nothing more than a weak attempt to evade the unfortunate consequences of his extended inattention to his own case.

  Federal Rule of Bankruptcy Procedure 8002 provides that notice of appeal "shall be filed within [ten] days of the date of the entry of the judgment, order, or decree appealed from."  Fed. R. Bankr. P. 8002(a) (2007).  The rule provides: "An extension of time for filing a notice of appeal may not exceed [twenty] days from the expiration of the time for filing a notice of appeal otherwise prescribed by this rule or [ten] days from the date of entry of the order granting the motion, whichever is later."  *Id.* 8002(c)(2).  As noted above, the Second Order, which was issued in July 2005, dismissed Appellant's appeal without prejudice to refiling and then stated that "[f]or the purpose of any new notice of appeal, the time elapsed between the filing of the first notice of appeal and any ensuing actions of the [b]ankruptcy [c]ourt on remand is tolled."  (R. on Appeal, Dist. Ct. Docket No. 33 at 1 [7/6/05 Hr'g Minutes].)  The docket record for the adversary proceeding shows that no action was taken by the bankruptcy court or the parties for the four months after the Second Order was issued.  (*See id.*, Adv. P. Docket.)

First, I find that Appellant could not have reasonably expected the Second Order to have tolled his right to appeal past thirty days after issuance of the Second Order.  The Tenth Circuit has emphasized that an appellant has a duty to familiarize himself with the appellate rules, which, in the case of an appeal of a bankruptcy judgment, expressly permit a *maximum* extension of the time to file an appeal of twenty days.  *See Certain Underwriters at Lloyds of London v. Evans*, 896 F.2d 1255, 1257–58 (10th Cir. 1990) (criticizing district court order granting "an enlargement of time for filing notice of appeal which exceeded the maximum time limits prescribed by the appellate rules"); Fed. R. Bankr. P. 8002(c)(2) (2007).  Thus, the district court lacked the discretion to toll Appellant's right to appeal beyond the maximum time limits prescribed by the rules.

Alternatively, further assuming that Appellant's window for filing a new notice of appeal of the Matheson Judgment somehow persisted beyond the maximum time limits set forth in the rules of procedure, the window for appeal unequivocally expired under the express language of the Second Order itself when Appellant failed to act subsequent to "ensuing actions" by the bankruptcy court.  As courts that have issued a final judgment are wont to do, on December 9, 2005, the bankruptcy court took action and closed the adversary proceeding.  (*See* R. on Appeal, Adv. P. Docket [12/9/05 Closure Notation].)  I find that the bankruptcy court's closure of the case constituted "ensuing actions of the [b]ankruptcy [c]ourt" sufficient to end the tolling period set forth in the Second Order, starting the clock on the time for filing a notice of appeal under Rule 8002(a).  (*See id.*, Dist. Ct. Docket No. 33 at 1 [7/6/05 Hr'g Minutes]); Fed. R. Bankr. P. 8002(a) (2007).

-16-

Appellant took no action within the subsequent ten-day period established by Rule 8002(a).  Indeed, Appellant took no action until July 13, 2006 — more than *six months* after the bankruptcy court closed the adversary proceeding.  (*See* R. on Appeal, Adv. P. Docket No. 51 [7/13/06 Doc. Mot.].)  Thus, assuming that an appeal of the Matheson Judgment to the district court was an avenue that was available to Appellant, I find that Appellant's right to file a new notice of appeal expired no later than ten days after December 9, 2005.

In a footnote, Appellant asserts that he "does not have record of receipt of notice of the closing of the case." (Appellant's Br. at 20 n.9.)  Thus, he argues that "[b]ecause [he] did not receive adequate notice of the closing, significant time passed between the date the [b]ankruptcy [c]ourt closed the adversary proceeding and the date [Appellant] filed the Document Motion." (*Id.*)  I note the disjuncture between Appellant's initial assertion that he "does not *have record of receipt* of notice" of the closing of the adversary proceeding and his subsequent assertion that he did "not *receive*" notice of the closing.  Regardless, even if the court did fail to send notice, "failure to receive notice of entry of judgment or order is not an excuse for an untimely appeal because it is the party's affirmative duty to monitor the dockets." *In re Cahn*, 188 B.R. 627, 632 (9th Cir. BAP 1995); *accord In re Pac. Sales Co., Inc.*, 13 B.R. 634, 634 (Bankr. D.P.R. 1981) (holding bankruptcy court's failure to notify party of order did not toll the running of time for appeal from order).  I see no reason why this rule ought not be extended to failure to receive notice of the closure of a case.  If, as Appellant contends, his right to appeal hinged upon the occurrence of "ensuing actions" by the bankruptcy court, then Appellant ought to have fulfilled his "affirmative duty" by "monitor[ing] the docket[]" for any such action.  Instead, Appellant

shirked this duty for no fewer than seven months before he saw fit to request that the bankruptcy court resurrect his right to appeal.  The bankruptcy court rightly denied the request.

        **c.**       ***The Unique Circumstances Doctrine***

The doctrine of unique circumstances applies where an affirmative action by the court has misled a party.  *In re Weston*, 18 F.3d 860, 863 (10th Cir. 1994).  Appellant contends that this doctrine applies in this case because he "relied on the Second [] Order['s] language that the [b]ankruptcy [c]ourt would act, and [Appellant's] rights would be tolled until such action." (Appellant's Br. at 25.)  Assuming, again, that Appellant had a right to appeal the Matheson Judgment to the district court rather than a right to appeal the Second Order to the court of appeals, I find that the doctrine is inapplicable on two alternative grounds.

First, Appellant could not have reasonably expected the Second Order to have tolled his right to appeal past thirty days after issuance of the Second Order.  As noted above, the Tenth Circuit has emphasized that "an appellant has a duty to familiarize himself with the appellate rules," which, in the case of an appeal of a bankruptcy judgment, expressly permit a *maximum* extension of the time to file an appeal of twenty days.  *Evans*, 896 F.2d at 1258; *see* Fed. R. Bankr. P. 8002(c)(1) (2007) ("An extension of time for filing a notice of appeal may not exceed [twenty] days from the expiration of the time for filing a notice of appeal . . . .").  Thus, notwithstanding the bankruptcy court's inaction in July and early August 2005, within thirty days after the Second Order, Appellant ought to have filed a notice of appeal to preserve his rights under Rule 8002.  Once those thirty days passed, any inference that Appellant's inaction was

attributable to the language of the Second Order was eclipsed by the conclusion that Appellant had abandoned his challenge to the Matheson Judgment under the rules of procedure.

Even setting *Evans* aside and assuming that a right to appeal could be preserved beyond the maximum of thirty days provided for under Rule 8002, Appellant's argument is wrong on the facts. Appellant contends that the bankruptcy court never took any "ensuing action," as contemplated by the Second Order. (Appellant's Br. at 25.) However, as noted above, the bankruptcy court *did* take action subsequent to the Second Order: it closed the adversary proceeding in December 2005. Thus, even if the clock on his time to appeal had not already started and expired in July 2005, closure of the case most certainly would have set the clock running in December 2005 — and the clock most certainly ran out long, long before Appellant filed the Document Motion in July 2006. Appellant cannot seriously contend that after the bankruptcy court closed his case, he continued to forebear renewal of his appeal of the Matheson Judgment in reliance on the Second Order.

**3.    *Conclusions***

Based on the foregoing it is therefore

ORDERED that the bankruptcy court's decision is AFFIRMED.

Dated this 30th day of May, 2007.

BY THE COURT:

s/ Edward W. Nottingham
EDWARD W. NOTTINGHAM
United States District Judge